We will now proceed to the third case, McFadden v. Dorvit. Mr. Chang. Thank you, Your Honors. Good morning, Your Honors. May you please support. I'm Albert Chang with the law firm of Bottini & Bottini in San Diego. I'm arguing this appeal on behalf of our objective appellant, Gary McFadden. We challenge the district court's final approval order on four key grounds. The first is the inadequacy of the monetary component of the proposed settlement. The second is the district court's failure to properly consider the strength of the underlying derivative claims. The third is the inadequacy of the window addressing corporate governance reforms in the proposed settlement. And the fourth is the inadequacy of the federal plaintiff's ability to adequately represent PSI's interests. With regard to the monetary component, we submit that the monetary component of $937,500 is illusory. It is illusory because that amount, the PSI's insurers were already obligated to pay because the insurers are obligated to contribute to PSI's defense costs in the related litigation. And that's exactly what that $937,000 plus was for. Also, can I stop you and just ask you a question about jurisdiction? So you're relying on this Aurora case, and the Aurora decision is very narrow. I mean, it's kind of an extra-textual interpretation of 1367. And it depends on your client not having had any other route because he does destroy diversity as an intervener. And you had filed a suit in Illinois State Court challenging these actions, and I understand the Illinois court dismissed it as duplicative. But was there no other route? I mean, you didn't highlight that your client was going to destroy diversity before the district court, so far as I could tell. So tell me why Aurora justifies your being in court. Well, we cited in Funnel 1 of our opening brief that as an intervener, the intervener's citizenship is irrelevant so long as— That's not true under 1367B. An intervener, a plaintiff intervener who destroys diversity is barred. The only thing that would save you is our decision in Aurora, and I want to know why Aurora applies. Aurora applies because we're an intervener who is not an essential party in the underlying litigation. These are representative lawsuits. Mr. McFadden is one, but many, many shareholders of— No, no, no, no, no. I don't think Aurora—I mean, as I read Aurora, the rule isn't if you weren't an indispensable party. As I read Aurora, the rule is if you couldn't have pursued your claim, if your claim didn't exist at the time the suit was filed. Your client was pursuing litigation in Illinois State Court, so I'm just wondering why Aurora gets you into court. Well, overall, the idea is that we could have filed a lawsuit in federal court if we leave out the partnership, the RSM, PSISM, former auditor from the lawsuit, and we leave out the two non-diverse Michigan-based— But that's not how the lawsuit was constructed, so I'm just asking. It's pretty narrow, so again, I'm just asking why Aurora applies to you. Aurora applies because we're an indispensable party, and we are not an indispensable party, and we're an intervener in this context. That's not the rule of Aurora. Aurora doesn't say indispensable party. It says when the claim didn't arise until after the suit was already filed. In Aurora, the intervener wouldn't have been able to vitiate the claim any other way because the claim didn't arise until the suit was underway, and I'm asking why that rule applies to your client. Whether or not Mr. McFadden appears in the district court, PSI still has its own derivative claims. Those claims stand, and as a result, jurisdiction for the district court over the intervener stands, and as a result, this court— I don't think you're—I'm not quite sure you're following my question. I mean, you have two ways you could be in this suit. One is if Aurora applies to you, and you still really haven't explained to me why it does. The second is if our Feldsman rule is no longer good after the Supreme Court's decision in—what is it?—Devlin. So which one are you standing on? I'm unclear. We're standing on Aurora that, as an intervener, we do not—our appearance does not destroy diversity jurisdiction in district court or this court. Okay, but still, why not? Why couldn't you have asserted—Aurora depends on your not being able to have asserted the claim that you want to assert at the time the suit was filed. So explain to me why your client couldn't have done that. When he was asserting the claim in state court. Because whether—these are representative claims, and whether Mr. McFadden had a claim or not did not matter at all. PSI had a claim, both in state court in our case and in the federal district court here. Jurisdiction is not an issue. Okay, I don't think—just go ahead and move to the merits. The idea is that the insurers are already obligated to pay the $900,000-plus in defense costs. And the district court also did not have sufficient information to evaluate the value of the underlying claims because at the time of final approval, there's no information with regard to PSI's exposure in the securities—the SEC enforcement action, the criminal indictment against Mr. Weinmaster, and the whistleblower action was still ongoing at the time. And even if you consider the merits of the value of the $900,000-plus in this case, what we do know is that as a result of the individual defendant's alleged misconduct, PSI lost its market capitalization by about 92 percent, some $800 million—plus million dollars. And PSI has suffered millions of dollars in increased financing costs. And the defense costs in the security forecast action, that has lasted for several years. And Mr. Cohen's whistleblower action and the SEC enforcement action, all of those lawsuits, the cost of defending those lawsuits are staggering. And the securities forecast action itself was settled for $8.5 million. So based on all of those facts, it is wrong for the district court to hold that some $937,000 of settling proceeds is adequate. Now, the corporate governance measures in this case were also woefully inadequate because as defendants have admitted below, the proposed settlement merely increases or specifies the frequency of meetings and reviews and formalizes certain practices. Take a look at the 2.1—2.2.1A1 of the stipulation. It says that—well, one of the measures is that the audit committee was to meet six times every year. But at the time of the settlement, the audit committee was already required to meet four times a year at least. And in the hearing below, defendants conceded that the audit committee was meeting very frequently already. That is only a window dressing corporate governance reform. Whatever the value of these codifying or formalizing measures conferred upon PSI, it is insubstantial in light of the value of the derivative claims that are released in exchange for these window dressing measures. Are you saying that the 17—what is it, 17? The list of 17, is that right? There are 17 corporate governance reforms. Yeah. And those—are you saying they were already in existence? Many of them were. One new one that we pointed out was a clawback policy. A what? A clawback policy. Clawback, okay. Yeah. And—but regardless of the value of those corporate governance reforms, the district court itself, that's on page 25 of the appendix, the district court itself expressed shock that PSI did not already have those measures already in place. This shows you how rudimentary these corporate governance reforms are. And so under the United Founders case that we have cited in our briefs, the court—and I'm quoting in a derivative lawsuit, considering the settlement, quote, the court must weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise taken as a whole is in the best interest of the corporation and its shareholders. Now, the district court here did not properly consider the strength of the underlying derivative claims. Well, the district court kind of focused on this demand futility. Right. And you think that's not good enough? No, because demand futility is only one of the two aspects of a derivative lawsuit. We cited the Delaware Supreme Court decision in Aronson v. Lewis. There the court identified two distinct parts of a derivative lawsuit. The first one is, and I quote, a suit by a shareholder to compel the corporation to sue, end of quote. And that is the demand futility part. Is that what would be called derivative? Yes, that is the derivative standing part. But there's a second part of the lawsuit, and I quote, is the suit by a corporation asserted by the shareholder on its behalf against those liable to it. That is the merits of the underlying lawsuit. And here the underlying lawsuit is meritorious because we have an accounting fraud where the company has to receive. So you're saying that the demand, that the plaintiff's failure to make a demand on the board is irrelevant. So when the district court assessed the chances of the plaintiff's prevailing, he shouldn't have assessed whether he thought the plaintiffs were going to make it to the merit stage at all. Demand futility is relevant, but it should not be the only issue that is considered. Even if demand futility was weakly pled or not established in the district court, the plaintiff would have been given leave to amend. We cited three cases. Leave to amend the first derivative complaint on the district court level is routine because of how difficult it is to plead demand futility. And even if demand futility fails, the case, a plaintiff can make a demand on the board. To the extent that the board refuses demand at that juncture, the case becomes a demand-refused case. All we are saying is that this is only one of the procedural hurdles in a derivative lawsuit. It is wrong for the district court to only consider that aspect of the lawsuit without considering the underlying merits of the lawsuit. And here we have an accounting fraud. The company has to restate three years of its financial results. We have a criminal indictment. We have an SEC investigation and enforcement action. So for those reasons, the underlying case is both meritorious and, as I stated earlier, valuable. The district court did not consider those facts before approving the settlement. Do you want to save some time for rebuttal? Yes, I will reserve the remainder of my time. Thanks. Thank you, Mr. Cheng. That's who you are. Ms. Omer. Good morning. May it please the court. I represent the company and the director defendants who joined the company's board after 2017. None of these individuals were on the board at the time of the alleged wrongdoing in this case. And, in fact, at the time the plaintiffs filed their amended complaint, a majority of the company's board was comprised of new directors who were not on the board at the time of the alleged wrongdoing. That's significant because this is a shareholder derivative case. The plaintiffs in this case did not allege that they suffered any individual injury. Instead, they were seeking to bring a claim on the company's behalf and take control of this lawsuit away from the company's board. In order for this suit to have moved forward, the plaintiffs would have been required to plead with particularity that a demand on the board was excused because a majority of the board was conflicted with respect to the matters at issue. For the reasons discussed, that would have been exceedingly difficult to do because a majority of the directors was not even on the board at the time of the alleged wrongdoing. Would that cure everything? Excuse me, Your Honor. Would that cure the problem? Your Honor, that creates a problem for the plaintiffs in terms of being able to plead that a pre-suit demand on the board was excused. To the extent that you define the problem as whether you have a conflicted majority of directors, you by definition cannot have a conflicted majority of directors when those directors were not on the board at the time of the wrongdoing. As a result, under Federal Rule of Civil Procedure 23.1, this case could not have moved forward. It continued to be the case that at the time of the settlement in this matter, the vast majority of the board was comprised of individuals who had nothing whatsoever to do with the matters at issue because they were not on the board at the time. Nonetheless, the board concluded in the exercise of its business judgment that the settlement of this case was in the company's best interest for a few reasons. Number one, the board believed that the settlement consideration was beneficial to the company. Number two, the settlement brought an end to this lawsuit, and that was good for a few reasons. Number one, the company was obligated to pay the defense fees of all of the individual defendants in this case. The settlement put a stop to that expense. Number two, the settlement brought a definitive conclusion to this case, and this is a company that's trying to move on from the matters at issue. The Seventh Circuit has recognized over and over again that derivative cases exact a real toll on companies, and this settlement would have allowed the company and its management to move on from the burden and distraction posed by this case. Well, there's a lot of credit given to what he called a negotiator or the person that engaged in the settlement. What is he called? Your Honor, are you referring to the mediator who presided over the settlement discussions? Yeah, mediator. Yes, Your Honor. I mean, in this case, I would say that there are a few things that are worth noting regarding the settlement. The first is that the settlement is entitled to deference not only because of the involvement of a neutral mediator who's presided over numerous derivative cases, is expert in cases of this type, believed the consideration here to be sufficient, and looked at every aspect of this before we signed off on it, but it's also because the neutral board, who had nothing to do with the matters at issue here, believed that the settlement was in the company's best interest. This court has specifically held in the United Founders case that with regard to a derivative settlement, the business judgment of the court is not to be substituted for that of the parties whose business is involved. That's incredibly important in this case. This case is completely different from a class action matter where you have individual claims that are being compromised, and you have absent class members who are not appearing in court. Instead, Your Honors have the company whose rights are being compromised right here in the courtroom in front of you, just as Judge Durkin did. And the disinterested board who's responsible for the stewardship of this company made a judgment that this settlement is in the company's best interest. Counsel, can I ask you to address the jurisdictional point? Your Honor, I'm happy to do so. I know that there was a lot of focus on Aurora. I actually think that there are some threshold questions that we have to get to before we even get to Aurora. So I think there's a question, first of all, of whether the citizenship of a party who intervenes for purposes of objecting to a derivative settlement is even relevant. This court held in Felsen that when the court is considering the diversity of parties in a derivative case, the court only looks to the citizenship of the lead plaintiffs, and it ignores the citizenship of every other stockholder. Now, in this case, Mr. McFadden obviously is an intervener. He's not a lead plaintiff. It's unclear to me that you actually look to his citizenship merely because of the fact that he's intervened in the case. Really? I thought Felsen said you had to intervene in order to challenge it, right? Your Honor, Felsen did say that you have to intervene, but Felsen doesn't talk to the citizenship and the diversity question in particular. So I don't think that Felsen— Why does he get to intervene under 1367B when he's a plaintiff who destroys diversity? Your Honor, I actually—I'm not sure that the language of Section 1367B bars him from intervening in this case because the language of 1367B specifically addresses individuals who are seeking to intervene as plaintiffs under Rule 24. Now, Rule 24, I think it's a little bit of an odd construct. Frankly, I have to say I find the Felsen decision a little bit odd because I think Rule 24 is a bit ill-suited for purposes of someone who's seeking to intervene. Is Felsen even good? Is Felsen good after Devlin? We're kind of out on our own on that. This court in the Robert F. Crowley case versus Booth, I think, suggested that it is still good law. But didn't decide, right? Didn't decide it. I think it's an open question. I do think that Rule 24 is a little bit ill-suited for this purpose. It seems to be set up in terms of a dichotomy between intervener plaintiffs and intervener defendants. And here, obviously, we have something that doesn't really fall into either category. We have an intervener objector. Not a plaintiff, not a defendant. Not a plaintiff. Not a floater. Something like that. I think you at least have an argument that maybe he was intervening for purposes of trying to be a plaintiff. He did ask Judge Durkan both to reject the settlement as well as to substitute him as the plaintiff. So I think it's arguable that he was seeking to be an intervener plaintiff. But I don't think it's clear-cut. Okay. Thanks. Getting back to the merits of the settlement, Judge Durkan still gave careful consideration to Mr. McFadden's objection. And his decision approving the settlement can only be reversed upon a clear showing that he was guilty of an abuse of his discretion. I think that any reference to that standard of review was missing in Mr. McFadden's presentation. Now, on appeal, Mr. McFadden makes two broad arguments as to why Judge Durkan purportedly abused his discretion. The first argument is that Judge Durkan purportedly should have given equal or greater emphasis to the merits of the claims. And in his brief, he specifically focuses on the merits of the claims against a single defendant, Mr. Winemaster. But that argument doesn't make sense. Demand futility in a derivative case is the threshold question. The case simply does not move forward unless the plaintiffs are able to plead with particularity that demand was excused. He does not argue that that's not the law. Mr. McFadden also doesn't argue that Judge Durkan correctly analyzed that question. And given that, there's no way that the merits of this case would ever have been reached. Mr. McFadden also raised a new argument on reply, which was that even if the complaint would have been dismissed for failure to plead demand futility, the court erred because it could have granted leave to amend. But any amended complaint would have suffered from the same defect as the existing complaint here. As I said, the law is that with regard to an amended complaint, the court must evaluate demand futility with the board as it exists at the time of the amended complaint. As I mentioned, a majority of that board consisted of individuals who weren't even on the board at the time of the wrongdoing at issue. And so his problem isn't solved. Mr. McFadden's second argument is that Judge Durkan abused his discretion because the settlement consideration allegedly was insufficient. That argument likewise fails for several reasons. To begin with, Judge Durkan recognized, given the likelihood that this case would have been dismissed, that any recovery was better than nothing. Moreover, as discussed, this court has recognized that it should not substitute its business judgment for that of the board. But that is exactly what Mr. McFadden is seeking to do. With regard to the monetary contribution, Mr. McFadden complains about the fact that it was earmarked for defense costs. But he does not dispute Judge Durkan's conclusion that because money is fungible, a savings to the company is the same thing as a benefit to the company. Instead, his real complaint seems to be that he would have preferred for the money to be used for a different purpose. But again, that's a matter that's entirely within the board's prerogative, and it is not for this court to second guess. Needless to say, it is far from establishing that Judge Durkan abused his discretion. With regard to the governance, Mr. McFadden only contested two of the 17 reforms. He tries to claim otherwise on appeal, but the transcript of proceedings in front of Judge Durkan is clear. Judge Durkan repeatedly asked him whether he was only contesting two of the 17, and he agreed. That's at A.O. 21 and A.O. 22. Regardless, I think his briefing on appeal makes clear that his only complaint has to do with two of the 17 reforms. His primary argument is that these were things that the company was already doing, but his reply explicitly concedes that several of the measures are completely new. And even as to the two measures that Mr. McFadden actually did challenge, he agreed with Judge Durkan's assessment that there was value to formalizing measures that the company was informally undertaking. His only quibble was that he felt that the value of those measures should have been discounted. But again, neither he nor the court should second guess the business judgment of the disinterested board in this regard. My time is almost up. Unless your honors have any questions, I'll ask. Thank you, Ms. Euler. Thank you. Mr. Otto. Good morning, your honors. May it please the court. I'm Stephen Otto, and I represent the plaintiff with Pelley's. The district judge—the appellant's claim is that the district judge abused its discretion in finding that the plaintiff of Pelley's were adequate representatives of the company in this derivative suit. It's a bit of a circular argument that depends entirely on this court finding that the district judge abused his discretion in approving the settlement in the first place. So that by construct, by agreeing to this unfair settlement, somehow the plaintiff of Pelley's were inadequate. As Ms. Umar has explained, the district judge did not abuse his discretion in finding that the settlement was fair, adequate, and reasonable. So the fact that the plaintiff of Pelley's actually agreed to this settlement, which did convey significant value, can't be the basis for determining that they were inadequate representatives. The only other aspect of the settlement that Ms. Umar did not address is the reasonableness of the fee award. The contention that the settlement was inadequate because of the attorney's fee provision was fully vetted by the district judge based on a fulsome inquiry both at the preliminary approval hearing and the final approval hearing. The district judge properly rejected the notion that the fee award was inappropriate in any way in overruling the appellant's objection, and for good reason. The record established that this settlement checks all the boxes of a fair, reasonable, and adequate settlement. It was negotiated only after the substantive terms of the settlement were agreed to. It was blessed by a well-respected mediator who guided the parties to the settlement, and then after the settlement terms were agreed to, guided the parties on the amount of the attorney's fees. And it's warranted by the substantive terms of the settlement, which were 17 meaningful corporate governance reforms and a fund of $1.895 million. It was also supported by a lodestar crosscheck, which was cut off at the time of the stipulation of settlement and represented a multiplier of only 1.04. Now, there were only two objections to this settlement, and only one of the objectors appealed from the district judge's ruling. And specifically, the district judge noted that, I think that's a fair compensation for what I have said repeatedly is an excellent result for the company. There was nothing in the record to demonstrate that the district judge abused its discretion in making that finding. Your position is that the fact that it's 50% of the settlement goes to attorney's fees, that we should look at the potential savings to the company? Is that the focus we should have? And also the fact that the settlement comprised the 17 corporate governance reforms as well. And the many derivative settlements have no monetary component at all. And if we had gone to the court with this settlement without any monetary component, we believe the fee still would have been justified based on the corporate governance reforms. Thank you, Mr. O'Rourke. Thank you. All right. Mr. Chang. Thank you, Your Honors. Appellees argue that while the settlement was approved by then what they asserted as a neutral board, but every derivative settlement has been approved by the board in existence at the time of the settlement. That approval does not and cannot insulate the settlement itself to be reviewed by the district court and on appeal by this court. United Founders is crystal clear that the district court has to evaluate all the factual and legal circumstances presented in the settlement. In this case, the underlying merits of the derivative claims were not considered by the district court, and that is error. Mr. Chang, specifically, name two or three of the factors that you believe the district court did not address in the demand futility area. The demand futility area, the district court entirely fixated on that issue and found that it's likely that demand futility was not sufficiently established. What the district court did not address was the underlying merits and the value of the derivative claims. For example, the district court did not address whether the criminal indictment against Mr. Winemaster and the SEC enforcement action materially improved the likelihood of success of the underlying derivative claims. Under Delaware law, and we cited a Metro Communications case for that proposition, the business judgment rule does not protect against criminal and bad faith conduct. And this is what we have here. It's an accounting fraud case where there is a criminal indictment and an SEC enforcement action. The merits in this case are strong. The district court did not consider those, nor did the district court have a sufficient basis to decide on the monetary value of the settlement. Did you offer an alternative figure in that area? We have submitted the numbers that I recounted. The underlying SEC securities foreclass action was settled for $8.5 million, and the defense cost was staggering. PSI has suffered millions of dollars every year for finance costs. Those were numbers that the district court had. Yeah, but so the district court had those numbers? Yes, the district court had. Are you saying that there's just nothing in the record to reflect Judge Durkin's consideration of that? What the district court did not have was the defense cost in the underlying SEC enforcement action, which at this moment is still going on. The settlement of the whistleblower action that was still going on at the time of final approval. There has been some talk about the neutral mediator. At the time when this settlement was brokered, that was before the criminal indictment came down in July of 2019. That was before the SEC commenced enforcement actions. There were four people who were charged with the crime? I believe three. Three? Yes, Mr. Weinmaster and two other officers. Yes. I see my time is up. You can make a concluding remark. Well, the monetary component of this settlement is this new wine putting in a—I'm sorry, old wine putting in a new bottle. The insurer is already obligated to pay the money. The company did not receive any real benefit. And under the case law in this circuit, we urge you to reverse the demand. Thank you, Mr. Chang. Thanks to all counsel. The case is taken under advisement.